UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:25-cv-67-LLK

JUSTIN B.[1] PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review pursuant to 42 U.S.C. § 405(b) of the Final Decision of the Commissioner denying his claims for Childhood Insurance (CIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. [DN 1].[2] Plaintiff's Fact and Law Summary is at DN 15, the Commissioner's responsive Fact and Law Summary is at DN 17, and Plaintiff's Reply is at DN 18. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 12]. The matter is now ripe for determination.

After examining the administrative record, the Administrative Law Judge's (ALJ's) Decision, the arguments of the parties, and the applicable authorities, the Court finds that Plaintiff's two arguments are unpersuasive, the ALJ's Decision is supported by substantial evidence, and the ALJ's findings comport with applicable law. Accordingly, the Court will AFFIRM the Commissioner's Final Decision and Dismiss Plaintiff's Complaint.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this Report and Recommendation is shortened to first name and last initial.
[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

## I. BACKGROUND

**Administrative History**. Plaintiff filed applications for CIB (survivor and life claims) and SSI in July of 2022, alleging disability from February 1, 2016, at age 18 as a result of autism, fibromyalgia, heart issues, and heart issues causing fainting spells. [DN 11] at 304. The claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The in-person hearing was conducted on January 17, 2024, before ALJ David Peeples with attorney Jaime Nobis attending with Plaintiff. Also attending and testifying during the hearing was impartial vocational expert, Robert Breslin. [DN 11] at 56-91. On May 3, 2024, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled within the meaning of the Act. [DN 11] at 16-32.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council; on March 20, 2025, review was denied. [DN 11] at 7. At that point, the ALJ's Decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). This Court reviews the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered his unfavorable Decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. The unfavorable Decision denying Plaintiff's claims for CIB and SSI was based upon the five-step sequential evaluation process applicable in all Social Security disability cases. The ALJ found that having been born on September 27, 1997, the claimant had not attained age 22 as of February 1, 2016, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)). At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 2016, the alleged onset date (20 CFR 404.1571 and 416.971 *et seq*.).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: cardiac dysrhythmias and fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

As in any case that proceeds beyond Step Three, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). The ALJ found that, notwithstanding his impairments, Plaintiff retains the RFC to perform work at all exertional levels but with certain limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can never climb ladders, ropes or scaffolds and should avoid exposure to hazards, such as unprotected heights and moving mechanical parts.

ALJ's Decision, [DN 11] at 24.

At Step Four, the ALJ found that Plaintiff has no past relevant work (20 CFR 404.1565 and 416.965). The ALJ made additional findings that Plaintiff was born on September 27, 1997, and was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963); Plaintiff has at least a high school education (20 CFR 404.1564 and 416.964); and transferability of job skills is not an issue because Plaintiff does not have past relevant work (20 CFR 404.1568 and 416.968).

At Step Five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 1, 2016, through the date of the decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

## II. STANDARD OF REVIEW

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id.* If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id.* As described by the Supreme Court,

"whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

**Plaintiff's Argument.** Plaintiff's sole argument on appeal is that "[t]he Commissioner erred as a matter of law by failing to properly evaluate the medical opinions of record in accordance with 20 C.F.R. §§ 404.1520c, 416.920c." [DN 15] at 8. Specifically, Plaintiff argues that the ALJ failed to articulate his supportability rationale and inadequately articulated his consistency rationale in evaluating the persuasiveness of consultative psychological examiner Ollie Dennis's opinions. In response, the Commissioner posits that the ALJ's persuasiveness evaluation of Dr. Dennis' opinion—when the ALJ's Decision is read as a whole—complies with the regulatory requirements. In Reply, the Plaintiff insists that remand is warranted, arguing that "the ALJ did not provide sufficient articulation of the supportability factor to allow for meaningful judicial review. It is also impossible to determine merely from a review of the decision, precisely why the ALJ found Dr. Dennis' opinion unsupported." [DN 18] at 4.

## III. DISCUSSION

**Plaintiff's Hearing Testimony**. At his hearing before ALJ Peeples, Plaintiff was 26 years old and testified that he completed high school with an IEP that included a scribe, had no driving permit or license, and did not drive. [DN 11] at 62-63, 67. He had never worked, and lived with his mother and sister in a rental house. *Id*. Plaintiff did not like to leave his house, and his days were spent at home watching TV or using his computer to read, play games, and communicate with friends. [DN 11] at 65-66. He feared leaving the house because he had no control of things outside, and he sometimes became overwhelmed by lights, sounds and people in stores. [DN 11] at 66-67. He attributed difficulty bathing to sore and tired hands and arms from fibromyalgia; he was unable to tie his shoes and received occupational therapy for fine motor skills when he was young. [DN 11] at 68-70. He had carpal tunnel in addition to motor skill problems, and struggled with buttons. [DN 11] at 71. He attended four years of community college, taking a full-time load of in-person and online classes, but quit because of his health issues and a lack of direction in his life. *Id*. He found the work of college physically and mentally exhausting. [DN 11] at 72. Plaintiff received mental health treatment at Pennyroyal Center that has somewhat helped him mentally. *Id*. His mental health struggles included hearing things, overthinking, anxiety attacks, and he occasionally wore noise-cancelling headphones in public that helped somewhat. [DN 11] at 73-4. Due to autism, he had difficulty focusing when reading online and watching movies. [DN 11] at 82. He received extra time accommodation in both high school and college for test taking. *Id*.

Plaintiff's physical conditions included tachycardia events which happened about twice monthly. *Id*. He had dizziness upon standing, but had not passed out in a while. [DN 11] at 75. He estimated that between the tachycardia and fibromyalgia he could stand for about five minutes before he feels lightheaded and his legs start to shake, and he could walk for five to ten minutes.

[DN 11] at 75-6. He had not passed out from dizziness or lightheadedness in several months, but once or twice a week had balance problems that made him fall or feel like he was going to fall. [DN 11] at 76-7. He rode a stationary bike, walked and ran for light exercise but those activities caused chest pain. [DN 11] at 78. Plaintiff's fingers and wrists had always felt tired and shaky, and his handwriting looked jittery, but he could type for about five minutes. [DN 11] at 78-9. Physical therapy helped somewhat, but he felt soreness daily in his legs and core due to fibromyalgia. [DN 11] at 79-80. On fibro attack days—which were about ten days per month—he stayed in bed or sat for about fifteen minutes at a time. [DN 11] at 81. Plaintiff had migraines and sometimes nausea especially when it was hot and he was in the sunlight. [DN 11] at 83. Transportation was one reason Plaintiff had not seen more doctors. *Id*. Plaintiff's college major was communications during the four years he attended; he took classes including English, speaking classes, psychology and religion at Hopkinsville Community College. [DN 11] at 84-5.

**Supportability/Consistency Analysis**. Under the new regulations that apply to this case, 20 C.F.R. §§ 404.1520c and 416.920c, an ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 404.1520c(a); 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(a), (c); 416.920c(a), (c). Of these five factors "[t]he most important ... are supportability and consistency." *Id.* The supportability factor states that, "[t]he

more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor states that, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* §§ 404.1520c(c)(2); 416.920c(c)(2).

For these two factors, the ALJ is required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* This "mandatory articulation requirement" has been said to "serve[ ] the same purposes as the good reasons requirement of the treating physician rule" because "[b]y requiring ALJs to articulate their analysis of the most important factors to consider ... the requirement permits meaningful judicial review" and "ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 WL 4232839, *4–*5 (S.D. Ohio Sept. 14, 2022).

**Dr. Ollie Dennis Opinion**. At issue in this case is the ALJ's persuasiveness analysis of consultative psychological examiner Ollie Dennis's opinion. According to the ALJ's Decision, Plaintiff was referred to Dr. Dennis for a consultative psychological examination due to a lack of evidence regarding a diagnosis of autism spectrum disorder. [DN 11] at 21. Dr. Dennis took Plaintiff's history and administered a series of tests during the May 22, 2023, examination. [DN 11] at 1149-1156. Notably, Plaintiff reported to Dr. Dennis that he graduated from high school in

2016, completed eight semesters at Hopkinsville Community College, had never worked, and lived with his mother. [DN 11] at 1150. He told Dr. Dennis that he was diagnosed with autism spectrum disorder but did not know details, spent his day cleaning his room and watching YouTube, and was able to care for personal hygiene without difficulty. *Id*. Dr. Dennis's observations of Plaintiff included no hearing or speech difficulty, normal apprehension, orientation to person/place/time, and good rapport was established. *Id*. Dr. Dennis found Plaintiff to be reserved but with fair eye contact and clear sensorium, with no indications of psychotic process; his perception seemed normal, mood appropriate, and conversational speech was intelligible and coherent. [DN 11] at 1151. IQ testing results fell in the "average" range, but with verbal comprehension scores in the "superior" range. *Id*. Plaintiff was found to have some weaknesses in spacial perception, psychomotor speed, and speed of manipulation as a function of manual dexterity and recent visual memory. *Id*. Plaintiff showed no difficulties in basic reading, mathematics, or writing; an Adaptive Behavior Composite Score of 86 suggested "adequate adaptive skills in communication, but moderately low daily living and socialization scores." [DN 11] at 1153. Plaintiff's self-reported answers on the Gilliam Autism Rating Scale-3 test yielded a score of 74, which suggested autism. [DN 11] at 1154. Dr. Dennis provided the following recommendations and conclusions:

> [Plaintiff's] overall performance yielded average intellectual scores with excellent verbal comprehension, average academic skills, and moderately low to adequate adaptive skills. Others who obtained such scores had mild limitations in the capacity to understand, retain, and follow instructions. Their ability to sustain attention to perform repetitive tasks was mildly to moderately impaired. They manifested moderately low adaptive skills, such that they were generally able to relate to co-workers and to accept supervision with moderate limitations. His ability to tolerate the stress and pressure of daily work activity was probably limited to a mild to moderate degree. Other records should be obtained to corroborate cognitive and academic strengths and weaknesses. Medical records should be accessed to differentially diagnose autism spectrum disorder.

Dr. Dennis Report, [DN 11] at 1154-55.

In addition to the opinions of consultative psychological examiner Dr. Dennis, the administrative record also includes mental health records from Licensed Clinical Social Worker Sherry Cruise, a therapist at Pennyroyal Center. The ALJ's Decision notes that Ms. Cruise's records constitute the first evidence of any mental health treatment by Plaintiff; that treatment began in November of 2022, some four months after Plaintiff filed his applications for disability. [DN 11] at 21. Plaintiff saw Ms. Cruise via telehealth/telephone visits for approximately a year before she completed a Medical Source Statement in January of 2024. [DN 11] at 1316-1318. Ms. Cruise assessed mild limitations in Plaintiff's ability to understand, remember, and carry out instructions and moderate limitations in carrying out complex instructions. [DN 11] at 1316. She assessed moderate limitations in Plaintiff's abilities to interact with others and to respond to changes in routine due to anxiety, depression, isolating behaviors, social anxiety, hypervigilance, panic and inability to focus and concentrate when anxious. [DN 11] at 1317. She indicated that her assessment was supported by "ongoing mental health assessments/diagnoses identify mental health symptoms/deficits." *Id.*

Plaintiff claims that the ALJ failed to offer any explanation for his finding that Dr. Dennis's moderate mental limitations are not supported. [DN 15] at 13. Plaintiff argues that supportability analysis required the ALJ to look to Dr. Dennis' report for supportive exam findings or explanations, but the ALJ did not reference Dr. Dennis' findings at all. In making this argument, Plaintiff has cited to one paragraph of the ALJ's Decision to support his argument that the ALJ failed to adequately evaluate the supportability and consistency factors when determining the persuasiveness of Dr. Dennis' opinion. [DN 15] at 12. Plaintiff's sole focus is upon the language the ALJ used in this paragraph:

> Regarding the opinion evidence, Ollie Dennis, Ed.D, the consultative examiner, opined that others who obtained such scores as the claimant had mild limitations in the capacity to understand, retain and follow instructions. He opined their ability to sustain attention to perform repetitive tasks was mildly to moderately impaired. He opined they manifested moderately low adaptive skills, such that they were generally able to relate to coworkers and to accept supervision with moderate limitations. He opined his ability to tolerate the stress and pressure of daily work activity was probably limited to a mild or moderate degree. However, he stated that other records should be obtained to corroborate cognitive and academic strengths and weakness. He also stated that medical records should be accessed to differentially diagnose autism spectrum disorder (Exhibit 18F). **The opinion of mild limitations is persuasive. There is consistency between his opinion of mild to moderate limitations in the ability to sustain attention and the assessment below of Sherry Cruise, LCSW, of mild limitations in his ability to understand, remember and carry out simple instructions. The opinion of mild limitations is persuasive. However, there is nothing indicating any moderate limitations.**

ALJ's Decision, [DN 11] at 22. (Emphasis added.)

The Sixth Circuit has explained that an ALJ's Decision must articulate specific reasons for the findings and conclusions that the ALJ makes. *Bailey v. Comm'r of Soc. Sec*, 173 F.3d 428 (Table), 1999 WL 96920, at *4 (6th Cir. 1999). Here, the ALJ concluded that Dr. Dennis' opinion of "mild" mental limitations was persuasive, but his opinion that Plaintiff had "moderate" mental limitations was not persuasive. [DN 11] at 22. Instead of focusing review upon explicit language used or omitted by the ALJ, courts review the ALJ's Decision in its entirety. *See Vansickle v. Comm'r of Soc. Sec.*, No. 5:23-CV-02229, 2025 WL 953180 at *4, 2025 U.S. Dist. LEXIS 60056 at *13 (N.D. Ohio Mar. 31, 2025) ("[A]n ALJ's failure to use the words 'supportability' and 'consistency' 'does not necessarily mean that the ALJ did not consider these factors.'").

Five of the seventeen pages of the ALJ's Decision are dedicated to a detailed discussion of Plaintiff's medically determinable but non-severe mental impairments of autism spectrum disorder and unspecified anxiety disorder. [DN 11] at 20-24. The ALJ notes that while Plaintiff reported a history of autism when he filed his application—and reported being diagnosed with autism as a child—neither school nor medical records indicate a history of autism and there is no indication

of special services received due to autism spectrum disorder.[3] [DN 11] at 20-21. The ALJ further notes that Plaintiff's mental health treatment via telehealth only began after he filed for benefits. [DN 11] at 21. The ALJ noted that Dr. Dennis' opinion of mild to moderate limitations in Plaintiff's ability to sustain attention was consistent with Ms. Cruise's assessment of mild limitations in his ability to understand, remember and carry out simple instructions, noting "[t]he opinion of mild limitations is persuasive. However, there is nothing indicating any moderate limitations." *Id*. As noted by the Plaintiff, supportability refers to the "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion." [DN 15] at 13. The Plaintiff argues that "at no point did the ALJ reference Dr. Dennis' findings as part of the evaluation of his medical opinion. Instead, all the ALJ offered was a conclusory statement that 'there is nothing indicating any moderate limitations'." *Id*.

In this case, the ALJ's analysis is not limited to the four sentences Plaintiff highlights on page seven of the Decision. [DN 11] at 22. When read as a whole, the Decision provides ample support for the ALJ adopting Dr. Dennis' opinion only to the extent of "mild" mental impairments. As Judge Simpson of this Court has observed, "an ALJ's reasons for rejecting or adopting a medical opinion may be gleaned from elsewhere in the written decision: 'meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that supports [his] conclusion.'" *Lillian A. v. Comm'r of Soc. Sec*., 4:23-cv-4-CRS-HBB, 2024 WL 987571, at *2 (W.D. Ky. Mar. 7, 2024) (citations omitted). The ALJ made findings throughout the Decision which support his rejection of Dr. Dennis' moderate mental impairment findings. For example, the ALJ cited the lack diagnoses,

[3] School records do not include any indication of autism. They indicate that Plaintiff was eligible for "504 Services" in school due to a diagnosis of fibromyalgia which reportedly affected his motor skills. His accommodations included use of a scribe when needed for tests, extended time, allowance for emailing homework to teachers, and for books/workbooks to be kept at home. [DN 11] at 410.

prior mental health treatment, or prescribed medications in Plaintiff's medical records. [DN 11] at 20. In addition to observing that Plaintiff graduated from high school and completed eight semesters at a community college, the ALJ found that:

> The treatment notes from his medical providers do not indicate a history of autism spectrum disorder. In fact there is no evidence of any significant mental health limitations. For example, neurology treatment notes have consistently indicated normal mental status findings. His attention concentration, recent and remote memory, fund of knowledge and language function have all been normal (Exhibit 9F). The treatment notes from his primary care provider do not indicate a history of autism spectrum disorder or any mental health impairment (Exhibit 7F).

ALJ's Decision, [DN 11] at 21.

The ALJ then reviewed in detail the findings from the consultative psychological examination in May of 2023 with Dr. Ollie Dennis. [DN 11] at 21-22. With regard to the supportability of Dr. Dennis' findings with his examination, the ALJ points out the inconsistency of Dr. Dennis' assessment of autism spectrum disorder (with no intellectual or language impairments) and the noted necessary additional academic and medical records Dr. Dennis said were still needed to differentially diagnose autism:

> He was assessed with autism spectrum disorder requiring support, without accompanying intellectual impairment or language impairment. However, the examiner noted that other records should be obtained to corroborate cognitive and academic strengths and weakness. He also stated that medical records should be accessed to differentially diagnose autism spectrum disorder (Exhibit 18F).

ALJ Decision, [DN 11] at 22.

When addressing the paragraph B criteria, the ALJ found that Plaintiff had only mild limitations in each domain and addressed Dr. Dennis' findings in each category. In discussing the functions of understanding, remembering or applying information, Plaintiff's presentation at the consultative examination with Dr. Dennis was noted by the ALJ:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. When he filed his application, he did not report any problems with memory, understanding or following instructions (Exhibit 5E). However, at the reconsideration level, he reported having "memory fog." He also stated that he sometimes has problems understanding and following instructions (Exhibit 10E). **At the consultative examination, his recent and remote memory were mildly limited. Testing revealed his verbal comprehension was excellent and exceeded 92% of his age group and was in the "superior" range. His perceptual reasoning was low average. His full-scale IQ score was average. Achievement testing revealed he had no difficulty in basic reading, mathematics or writing (Exhibit 18F).** The state agency psychological consultant at the reconsideration level opined that he had no limitations in this area (Exhibit 8F). The undersigned is generally persuaded by this opinion. However, doe to the mild limitations noted in his recent and remote memory, the undersigned is finding some mild limitations.

ALJ's Decision, [DN 11] at 23. (Emphasis added.)

With regard to interacting with others, the ALJ noted Plaintiff's presentation with Dr. Dennis during the consultative examination:

> When he filed his application, he did not report difficulty getting along with others. (Exhibit 5E). However, he reported that he did not like to go out around a lot of people (Exhibit 10E). Therapy notes reveal complaints of isolative behaviors and social anxiety. However, he is not prescribed any medication for anxiety. He has been described as polite. **At the consultative examination, testing suggested some moderately low socialization skills, but good rapport was established and he had fair eye contact and normal speech (Exhibit 18F)**. There is no evidence of difficulty relating to medical sources. Overall, there is nothing suggesting more than a mild limitation. This is consistent with the findings of the State agency psychological consultant at the reconsideration level, which is persuasive (Exhibit 8A).

ALJ's Decision, [DN 11] at 23. (Emphasis added.)

The ALJ rejected Dr. Dennis' opinion of mild to moderate limitations in Plaintiff's ability to concentrate, persist and maintain pace [DN 11] at 1154, based upon Dr. Dennis' test results:

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitations. When he filed his application, he reported problems with concentration (Exhibit 5E). At the reconsideration level, he also reported problems completing tasks (Exhibit 10E). **Testing revealed his working memory was average (Exhibit 18F).** Neurology treatment notes consistently indicate normal attention and concentration (Exhibit 9F). There is no evidence that

> he is easily distracted. Overall, there is nothing suggesting more than a mild limitation. This is consistent with the findings of the State agency psychological consultant at the reconsideration level, which is persuasive (Exhibit 8A).

ALJ's Decision, [DN 11] at 23. (Emphasis added.)

Finally, with regard to adapting and managing oneself, the ALJ noted Dr. Dennis' examination results:

> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. He reported difficulty handling stress and changes in routine (Exhibits 5E & 10E). **Adaptive testing revealed adequate adaptive skills in communication, but moderately low daily living and socialization skills (Exhibit 18F).** However, he did not seek mental health therapy until after he filed his applications for disability. Furthermore, while he does receive psychotherapy, he is not prescribed any psychotropic medication. Overall, the evidence has been rather limited regarding his mental health complaints. While he has some limitations in this area, there is nothing suggesting more than mild limitations. This is consistent with the findings of the State agency psychological consultant at the reconsideration level, which is persuasive (Exhibit 8A).

ALJ's Decision, [DN 11] at 23-24. (Emphasis added.)

The ALJ did not specifically use the words "supportability" and "consistency" in his explanations for finding the opinion of Dr. Dennis only partially persuasive (persuasive as to mild mental limitations, unpersuasive as to moderate mental limitations). However, the ALJ provided sufficient information for the Court to conclude that the moderate functional limitations expressed by Dr. Dennis were rejected as not supported by Dr. Dennis' own examination results. The above-quoted discussion provides sufficient information for the Court to determine that the ALJ's rejection of Dr. Dennis' moderate mental limitations is supported by substantial evidence and comports with the articulation regulations. As aptly noted by the Commissioner, the Sixth Circuit has upheld an ALJ's supportability analysis where the ALJ found the opined limitations were not well supported by the corresponding examination findings. *See Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *2 (6th Cir. Apr. 9, 2024).

Finally, the Court is unpersuaded by Plaintiff's argument that the ALJ's articulation of the consistency factor was insufficient. Plaintiff argues that while the ALJ found Dr. Dennis' opinion that he had moderate mental limitations unpersuasive, he only stated that Dr. Dennis' opinion was consistent with Ms. Cruise's opinion, not inconsistent with any evidence in the record. [DN 15] at 13. ALJ's Decision sufficiently articulated why he found Dr. Dennis' and Ms. Cruise's opinions consistent to the extent of mild limitations, but that greater limitations were inconsistent with the evidence of record and Dr. Dennis' own findings on examination. As the Commissioner notes, "[i]t would be a perversion of social security law to fault an ALJ for failing to credit two *unsupported* medical source opinions because they were *consistent* with each other." *Rattliff v. Comm'r of Soc. Sec*., No. 1:20-cv-1732, 2021 WL 7251036, at *10 (N.D. Ohio, Oct. 29, 2021).

When read in its entirety, the ALJ's Decision provides adequate support for his finding Dr. Dennis' moderate mental limitations to be inconsistent with the evidence of record. It is sufficient for an ALJ's reasons for determining the consistency of a medical opinion to be found elsewhere in the decision, *Crum v. Comm'r of Soc. Sec*., 60 F. App'x 449, 457 (6th Cir. 2016). The ALJ noted that Plaintiff's mental health treatment did not commence until some six-plus years after his alleged onset of disability in February 2016. [DN 11] at 21. Neither school nor medical records established Plaintiff's alleged autism diagnosis as a child. *Id*. The ALJ noted that medical treatment records included descriptors such as pleasant, good eye contact, good insight, normal mood and affect, normal attention and concentration, normal fund of knowledge and language function, and no evidence of any significant mental health limitations. [DN 11] at 21-22. Dr. Dennis' moderate mental limitations were also inconsistent with the state agency consultant Dr. Fedewa's opinion of no more than mild mental limitations [DN 11] at 117, and with completion of eight full-time semesters of community college. [DN 11] at 404.

In sum, the ALJ showed enough of his work to enable this Court to discern his reasoning for rejecting moderate mental limitations as inconsistent with the evidence as a whole. The ALJ's findings are supported by substantial evidence and are entitled to this Court's deference. [A]n ALJ's factual findings ... shall be conclusive if supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). "[T]he threshold for such evidentiary sufficiency is not high.... It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 1154.

## IV. CONCLUSION

‼

Most disability claims have medical and other evidence that could support findings either way. "However, as long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## ORDER

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence, the Commissioner's final Decision is hereby AFFIRMED, and Plaintiff's Complaint is DISMISSED. A final judgment will be entered separately.

September 9, 2026

**Lanny King, Magistrate Judge**
**United States District Court**